IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 08-06-JJF |
| ROBERTO DELEON-PEREZ, | : | |
| Defendant. | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Roberto DeLeon-Perez, by and through his undersigned counsel, Luis A. Ortiz, Assistant Federal Public Defender for the District of Delaware, submits the following Sentencing Memorandum in support of his June 10, 2008 sentencing hearing. For the reasons set forth below, Mr. DeLeon-Perez respectfully requests a sentence at or slightly below the bottom of the Sentencing Guidelines range of 41 to 51 months, which would be sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

**I. FACTUAL BACKGROUND**

On December 30, 2007, Roberto DeLeon-Perez was arrested for illegal reentry into the United States following a deportation. On January 2, 2008, Mr. DeLeon-Perez pled guilty to one count of illegal reentry following a deportation , in violation of 8 U.S.C. § 1326(a). Sentencing is scheduled for June10, 2008.

Roberto DeLeon-Perez' personal history and background are set forth in his Presentence Report "PSR". Mr. DeLeon-Perez, however, seeks to highlight several facts that may guide the Court's consideration of his sentence. Mr. DeLeon-Perez was born in Canton, Yerba Santa, in

Guatemala on January 11, 1974. He grew up in a very poor village and lived in an adobe house with dirt floors. Even today, his home in Guatemala does not have running water or electricity.

Mr. DeLeon-Perez' parents provided for the family essentially as subsistence farmers. Mr. DeLeon-Perez only attended school up until the third grade because he was needed at an early age to help his family farm. In October 2001, Mr. DeLeon-Perez came to the United States in order to assist with the needs of his family in Guatemala. Mr. DeLeon-Perez worked extremely long hours as a migrant worker and would send home money regularly to his family. However, while in the United States, Mr. DeLeon-Perez developed a severe drinking problem. In 2003, he was involved in a drunken incident with the roommate of one of his cousins which ultimately resulted in his only conviction and deportation in 2004. This has been his only criminal contact other than his arrest on the instant immigration matter. Mr. DeLeon-Perez has not consumed any alcohol since the incident in 2003.

Mr. DeLeon-Perez has indicated to defense counsel that he had no intention of returning to the United States following his deportation. However, do to his mothers recent illness that requires constant medical attention, he returned for what he thought would be one harvest season. He was in the United States for six months and was arrested with a group of workers returning from the mushroom farms in Kennett Square, Pennsylvania. Since his arrest he has lost all contact with his family and is not even sure if his mother is still alive. Moreover, Mr. DeLeon-Perez is extremely concerned for the well-being of his struggling wife and children in Guatemala. Mr. DeLeon-Perez is truly sorry for his conduct and is extremely unlikely to ever do anything like this again. For all the above reasons a sentence at or below the advisory Guideline range is respectfully requested.

## II. GUIDELINES CALCULATION

As calculated by his PSR, Roberto DeLeon-Perez has a total offense level of 21 and is in Criminal History Category II. The corresponding Guidelines range is 41 to 51 months.

## III. DISCUSSION

On January 12, 2005, the Supreme Court, as a remedy to cure the Sixth Amendment problems inherent in the mandatory application of United States Sentencing Guidelines under <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), "severed and excised" two provisions of the Sentencing Reform Act. <u>United States v. Booker</u>, 125 S. Ct. 738 (2005). The provisions affected are the elements of the Sentencing Reform Act which operate to make the Guidelines mandatory; Sections 3553(b)(1) and 3742(e). The result is that the Guidelines are now, consistent with the ordinary meaning of the term "guidelines," advisory only. District courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

Section 3553(a), which survives the <u>Booker</u> decision, directs the Court how to proceed in sentencing a defendant. First, it limits the court's sentencing authority as follows: "The court <u>shall impose a sentence sufficient, but not greater than necessary</u>, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a) (emphasis added). Paraphrased, these purposes include punishment, general and specific deterrence and the need to provide the defendant with needed training and care. <u>Id.</u> § 3553(a)(2).[1]  Second, Section 3553(a) directs that the court

---

[1] Quoted fully, paragraph 2 directs the court to consider the need for the sentence imposed-
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;'
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care,

"<u>shall</u> consider" seven listed factors "in determining the particular sentence to be imposed." These include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the range of sentences and any pertinent policy statements established under the guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense. <u>Id.</u> § 3553(a)(1)-(7). Thus, post-<u>Booker</u>, the guidelines are now to be considered as one of several factors that the Court must consider in determining an appropriate sentence.

It is wholly appropriate for this Court, after considering all relevant Section 3553(a) factors, to sentence Mr. DeLeon-Perez at or slightly below the bottom of the advisory Guidelines range of 41 to 51 months. Mr. DeLeon-Perez believes that such a sentence would not be inconsistent with <u>Booker</u> and the Supreme Court's subsequent sentencing decisions. <u>See</u> <u>e.g.</u>, <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007); <u>Gall v. United States</u>, 128 S.Ct. 586 (2007). The requested sentence reflects the goals of sentencing set forth in Section 3553(a)(2), by reflecting the nature and seriousness of the offense, providing deterrence to future conduct and allowing Mr. DeLeon-Perez the opportunity to return to his family in Guatemala as soon as possible.

---

or other correctional treatment in the most effective manner.

IV. **CONCLUSION**

For all of the above stated reasons, and any other reasons that this Court may find, Mr. DeLeon-Perez respectfully requests a sentence at or slightly below the bottom of the Guidelines range, to be followed by a period of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes of punishment: retribution, deterrence, incapacitation and rehabilitation.

        Respectfully submitted,

        */s/ Luis A. Ortiz*
        Luis A. Ortiz, Esquire
        Assistant Federal Public Defender
        Federal Public Defender's Office
        District of Delaware
        One Customs House
        704 King Street, Suite 110
        Wilmington, Delaware  19801
        (302) 573-6010
        ecf_de@msn.com

        Attorney for Roberto DeLeon-Perez

Dated: May 21, 2008